Vernon Engelhardt and Laverne Engelhardt v. Commissioner. William Engelhardt v. Commissioner.
Engelhardt v. Commissioner
Docket Nos. 2463-67, 2464-67.
United States Tax Court
T.C. Memo 1968-177; 1968 Tax Ct. Memo LEXIS 120; 27 T.C.M. (CCH) 867; T.C.M. (RIA) 68177; August 12, 1968. Filed *120 George Voss, First Nat'l Bank Bldg., Dodge City, Kan., for the petitioners. Charles H. Powers, for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax of Vernon and Laverne of $7,664.90 for 1964 and deficiencies in income tax of William of $4,797.20 for 1961 and $3,405.02 for 1964. Vernon and Laverne allege that the Commissioner erred in disallowing $23,324.15 as deductions from losses on advances to Colby Livestock Auction, Inc.
William alleges that the Commissioner erred in determining that the petitioner did not incur an operating net loss for 1964 of $29,000 resulting from advances to Colby Livestock Auction, Inc. which could be carried back to 1961 and in holding that, if incurred, they were nonbusiness bad debts rather than business bad debts. Findings of Fact William Engelhardt, hereinafter called William, resided on Route #2, Colby, Kansas 67701 at all times material hereto. He filed individual federal income tax returns for 1961 and 1964 as an unmarried head of a household. William, on his 1964 return, claimed in Schedule F a loss deduction in the amount of $21,552.69. On Schedule *121 2 attached to Schedule F of that return was an expense deduction entitled "indebtedness of Colby Livestock Auction, Inc., assumed on settlement of livestock ventures, $29,000.00." That deduction was computed by William as follows: Note from Colby Livestock Auction
3-13-63
$ 2,500.00
Check from Engelhardt Grain Co. to Colby Livestock Auction
7-19-63
20,000.00
Note to Colby Livestock Auction acquired from Clarence and Ted Vaughn with a check of Engelhardt Grain Co
10-16-63
7,500.00
Paid from personal checking account of William Engelhardt
9-10-64
4,000.00
Personal note dated 12-31-64 executed by William Engelhardt in favor of Thomas County National Bank in satisfaction of amounts due as guarantor of loans to Colby Livestock Auction 5,000.00
Total
$39,000.00
Less second mortgage received from sale of CLA assets 10,000.00
Deduction claimed per 1964 income tax return $29,000.00 868 William shows a net loss in the amount of $29,877.31 on that return. He filed an application on April 19, 1965 for a tentative carry-back adjustment in which a 1964 loss in the amount of $28,877.31 was carried back and applied against his 1961 adjusted gross *122 income less itemized deductions, resulting in the net amount of $18,364.76. Based upon the tentative computation as shown on that application, the Commissioner paid William a refund in the amount of $4,797.20 plus $114.87 interest. William did not sell any livestock during the years 1961, 1962 and 1963, nor did he deduct on his income tax returns for the said years any expenses connected with the raising of livestock. During the calendar years 1960 through 1964, William devoted substantially all of his time to his two principal activities, farming and Engelhardt Grain Co., Inc. William on his income tax returns for the calendar years 1961 and 1962 described his occupation as grainman-farmer; on his return for the calendar year 1963, he described his occupation as elevator operator. William, Vernon and K. W. Engelhardt are brothers. The petitioners, Vernon and Laverne Engelhardt, are husband and wife. They resided at all times material hereto in Colby, Kansas 67701. They filed a joint federal income tax return for the taxable year 1964. They claimed an operating loss of $26,775.78 on that return and, on Schedule 1 of Schedule F claimed the following as deductions: Indebtedness of Colby Livestock Auction, Inc., Colby, Kansas, assumption on settlement of livestock ventures
$20,824.15
Loan for working capital 2,500.00
Total $23,324.15
*123 Vernon did not sell any cattle during the calendar years 1962 and 1963. His income tax returns for the calendar years 1962 and 1963 do not show that he incurred other than minor expenditures which could be connected with the raising of any livestock and poultry. Vernon described his occupation as grain-man-farmer on his income tax returns for the years 1961 through 1963. Clarence Vaughn, a cattle buyer operating in the general vicinity of Colby, Kansas, became interested in 1962 in purchasing the Colby livestock auction barn from John Stickleman but was told it was not for sale. Stickleman later had an operation and the Colby livestock auction barn was offered for sale to Clarence Vaughn early in 1963. Clarence Vaughn learned that K. W. Engelhardt was also interested in the purchase of the barn and Vaughn thought that, through their joint efforts, the barn might be acquired at a lower price. Colby Livestock Auction, Inc., hereafter called C.L.A., was incorporated under the laws of Kansas on March 13, 1963 with authorized capitalization of $75,000. The common stock of C.L.A. was then subscribed for and issued as follows: Amount Paid In
Shares Issued
William Engelhardt
$ 5,000.00
500
Vernon Engelhardt
5,000.00
500
K. W. Engelhardt
5,000.00
500
Ted Vaughn
14,900.00
1,490
Clarence Vaughn
100.00
10
*124 The original stockholders of C.L.A. contracted to purchase the Colby Sale Barn for $60,000 on March 9, 1963, and assigned their right to purchase the Colby Sale Barn to C.L.A. on March 16, 1963. C.L.A. then performed the agreement to purchase Colby Sale Barn. The general type of assets thus purchased by C.L.A. consisted of land, office supplies, chattels, pens, fences, yards and buildings. The two Vaughns, at that time, jointly paid in $7,500 to C.L.A. and received its promissory note for $7,500. Vernon paid in $2,500 and received a note for that amount. Engelhardt Grain Co., a corporation solely owned by William, paid in $2,500 on March 13, 1963, charged the $2,500 to William's account and a note for that amount was issued by C.L.A. to William. Clarence Vaughn was to manage the sale barn and when C.L.A. commenced business, Clarence Vaughn managed the corporation's affairs, was its president, until he sold his stock, and received a salary. Some important decisions were made by the Board of Directors. William did not receive or earn any salary form C.L.A. in 1963 or 1964 and during the same period Vernon received $78.99 as compensation from C.L.A.
Vernon acted as clerk *125 at sales but otherwise William and Vernon did not actively participate in the operation of the sale barn 869 in 1963 while Clarence Vaughn was its manager. The record does not show that they sold any cattle through its facilities or that any purchases they may have made through it were frequent. Engelhardt Grain Co. issued a check on July 19, 1963 for $20,000 payable to C.L.A. That $20,000 loan was carried on the books and records of C.L.A. in its short-term notes payable ledger under item 17, dated July 24, 1963, as an amount payable to "Engelhardt Grain." The record does not show that it was carried differently on the books and records as of the date of trial. That $20,000 advance was carried in the accounts receivable ledger of Engelhardt Grain Co. under date of July 19, 1963 as an amount due from C.L.A., was continued in that manner through all of 1963 and was transferred under the date of December 31, 1964 in the records of Engelhardt Grain Co. from the accounts receivable ledger to the William Engelhardt personal account. William knew on December 31, 1964 that the fair market value of this obligation was substantially less than $20,000. William issued his check to *126 C.L.A. on September 10, 1964 for $8,000 and used $4,000 thereof as basis in the net operating loss deduction claimed on his 1964 income tax return. William, Vernon and their brother, K. W. Engelhardt, in October of 1963 purchased the stock ownership of Clarence and Ted Vaughn in C.L.A.
Engelhardt Grain Co. on October 16, 1963 issued its check for $17,500 to Ted Vaughn and Clarence Vaughn of which $7,500 was used by William in computing his basis in the net operating loss claimed on his 1964 income tax return. The balance of the check was used to purchase the C.L.A. stock held by Clarence R. Vaughn, Myrtle Vaughn and Ted Vaughn. C. H. Scheopner purchased livestock from C.L.A. during 1964, giving his check in the amount of $11,563.23. This check was subsequently dishonored and returned to C.L.A. which then entered suit against Scheopner in the District Court of Sherman County, Kansas, and as a result thereof, a judgment was entered on the 13th day of October 1964 in favor of C.L.A. in the amount of $16,040.43. This judgment included the check for $11,563.23 and other sums owed by Scheopner for cattle purchased from C.L.A., the total amount of such check and other sums owed being *127 $15,824.15. The difference between $16,040.43 and $15,824.15 represented interest to the date of judgment. Vernon issued his check for $15,824.15 to C.L.A. on July 30, 1964. Scheopner was a bonded cattle broker and was bonded by the American Surety Company of New York under livestock dealer bond No. 9502-64-66 in the amount of $5,000. On or about June 9, 1966 suit was commenced in Sherman County, Kansas, Civil No. 8059, by the said bonding company for the purpose of determining the rights of various claimants to the bond proceeds in the amount of $5,000. On January 5, 1967 the trustee in the above-mentioned proceeding distributed $2,967.17 in satisfaction of the bonding company's liability to C.L.A.
There was no way of collecting any additional amount owed by Scheopner. A resolution was passed at a Board of Directors meeting on October 30, 1964 to sell the assets of C.L.A. to Charles Chapman and Wayne Redmond. Pursuant to that resolution, the physical assets, including the land, buildings, equipment, pens, etc., were sold under a contract dated October 14, 1964. At the time of such sale there remained on hand certain cattle which C.L.A. sold to K. W. Engelhardt pursuant to *128 an appraisal by Production Credit Association for the amount of $22,340 and on December 24, 1964 he issued a check in the amount of $22,340 to C.L.A. which amount was used to pay debts owed by C.L.A.
C.L.A. through K. W. Engelhardt executed a promissory note on September 24, 1964 in the amount of $23,000 payable to the Thomas County National Bank, Colby, Kansas. C.L.A. on December 24, 1964 paid $13,000 to the bank leaving a balance due of $10,000. Vernon executed a promissory note on December 24, 1964 for $5,000 payable to the Thomas County National Bank, Colby, Kansas, cancelling one-half of the $10,000 due from C.L.A. The note was paid on January 14, 1965. [1]
Engelhardt Cattle Co., a partnership comprised of K. W., William and Vernon Engelhardt, commenced business in January of 1964. Engelhardt Cattle Co. during its life in 1964 had sales of $229,952.87, $58,461.18 of 870 which were transacted through C.L.A. The balance of the sales of Engelhardt Cattle Co., $171,491.67 or 74.5 percent, was transacted through outlets other than C.L.A.
Engelhardt Cattle Co. ceased doing *129 business in October of 1964. This partnership made its last purchase from C.L.A. on October 16, 1964 and its last sale to the said corporation on October 1, 1964. C.L.A. secured a line of credit in the amount of $100,000 from Thomas County National Bank on April 1, 1963. Vernon, William and K. W. Engelhardt executed a guarantee agreement to Thomas County National Bank under which they agreed to act as guarantors for indebtedness, liabilities and obligations of C.L.A. to the bank to the extent of $100,000. C.L.A. as of July 8, 1964 carried on its records short-term notes payable in the amount of $76,000, of which $20,000 was payable to Engelhardt Grain Co. leaving a balance of $56,000 due the Thomas County National Bank. C.L.A. as of July 8, 1964 had $44,000 of its $100,000 line of credit with the Thomas County National Bank which was not committed. William executed a $5,000 note on his guarantee of C.L.A.'s debts in favor of the Thomas County National Bank, which note was not paid until after the close of the taxable year 1964. [2]
C.L.A., as of February 28, 1965, carried *130 on its books and records, showed on the balance sheet, and included on its income tax return for that taxable year an asset, accounts receivable, in the amount of $21,624.05. The liabilities reflected on that balance sheet consisted of the loans payable to shareholders in the amount of $43,824.15 and issued and outstanding capital stock in the amount of $30,000. No debt due from C.L.A. to William or Vernon was created or acquired in connection with a trade or business of either taxpayer nor was the loss from the worthlessness of any debt due from C.L.A. incurred in either taxpayer's trade or business. All stipulated facts and exhibits are incorporated herein by this reference. Opinion MURDOCK, Judge: The Commissioner determined that the alleged debts here in issue were nonbusiness debts and the burden is upon the petitioners to show that they were business debts. The operation of C.L.A. was not a part of any trade or business of either William or Vernon when any debt due from C.L.A. was created or acquired by either William or Vernon, nor was a loss from worthlessness of any such debt incurred in any trade or business of either William or Vernon. Their farming activities *131 were not tied in with, related to or benefited by the activities of C.L.A. Vernon and William were not engaged as individuals in a business of raising cattle for sale. They had interests in several corporations other than C.L.A. but the businesses of the corporations were not a part of William's or Vernon's business and the businesses of those corporations were not related to the business of C.L.A. For about ten months in 1964 they were partners in Engelhardt Cattle Co. but the losses involved herein were not related to the business of that partnership. The petitioners have failed to show that C.L.A. owed them any business debt or that such a debt became worthless in 1964. The petitioners have not shown that either of them used an accrual method of accounting and reporting income. [3] A taxpayer using a cash method of accounting and reporting income must prove as a basis for a loss deduction that he sustained an actual loss in the tax year and his basis cannot be supported by a note given by him which remained unpaid at the end of the tax year. Thus the $20,000 note obligation and the two $5,000 note obligations included in the losses claimed must be excluded since there is no evidence *132 that they were paid in 1964. Decision will be entered under Rule 50. 871 Footnotes
1. The petitioners concede in their reply brief that this $5,000 item is not deductible in 1964.↩
2. The petitioners concede in their reply brief that this $5,000 item is not deductible in 1964.↩
3. The concession in their reply brief indicates that they used a cash receipts and disbursements method.↩